IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:25-cv-01662-CNS-STV

LYNDELL E. DANIELS, JR.,

Plaintiff,

v.

WILLIAM IDLER,
GLENN SNOW,
FAITH GOODRICH,
MATTHEW POUND,
ERIC WHITE,
AURORA POLICE DEPARTMENT and
CITY OF AURORA,

Defendants.

---

**ORDER**

---

Before the Court is Defendants' fully briefed Motion to Dismiss. ECF No. 51. For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion. In explaining why, the Court presumes familiarity with this case's factual and procedural background, as well as the allegations in Plaintiff's Amended Complaint (the operative complaint). *See, e.g.,* ECF No. 50; Fed. R. Civ. P. 12(b)(6).

Defendants advance several arguments in favor of dismissal. The Court considers them in turn below.

# I. ANALYSIS

## A. Collective Allegations

Defendants argue that Plaintiff "improperly intertwines allegations against Defendant Officers." ECF No. 51 at 3 (citation modified). But the Court agrees with Plaintiff that he has pleaded "specific factual allegations and specific roles" for the officers. ECF No. 56 at 4 (citation modified). To be sure, certain allegations refer simply to "Defendants" and "Officer Defendants." *See, e.g.,* ECF No. 50 at ¶ 45. But the operative complaint contains numerous other allegations that provide sufficient notice to individual defendants as to the claims Plaintiff brings against them, *see* Fed. R. Civ. P. 8(a)(2), and clarifies "who is alleged to have done what to whom," *Wilson v. Stoltenberg*, 182 F.4th 903, 917 (10th Cir. 2026) (citation modified). As for Officer Idler, the operative complaint alleges he arrived on foot at the scene; "ran [Plaintiff's] background"; lacked reasonable suspicion, as well as probable cause, to initially detain Plaintiff because he "did not fit the description of the individuals made by the caller"; and ordered Plaintiff "to put his hands up with weapon drawn and pointing in [Plaintiff's] direction." ECF No. 50 at ¶¶ 12, 13, 33, 81. As for Officer Snow, the operative complaint alleges that he "accompanied Officer Idler [and] admitted that Mr. Daniels did not fit the description given by the caller." *Id.* ¶ 83. And although the operative complaint alleges that Officer Goodrich was one such Officer Defendant, *see, e.g.,* ECF No. 50 at ¶ 45, reading the operative complaint in its entirety, *see Wilson*, 182 F.4th at 918, and drawing all inferences from it in Plaintiff's favor, Plaintiff has satisfied his pleading burden as to her as well. In other words, as in *Wilson*, although the operative complaint "could have been better developed, [its] allegations, properly

understood under the controlling standards, satisfy what is required at this stage." *Id.* Defendants are wrong to construe the operative complaint's allegations as narrowly as they do. *See* ECF No. 51 at 3.

**B. Unlawful Seizure**

Defendants seek dismissal of the unlawful seizure claim against Officer Snow, Officer Goodrich, Officer Idler, and Detective White. *See* ECF No. 51 at 4.[1] The Court considers the operative complaint's allegations as to Officer Idler and Detective White in turn.

*First*, as to Officer Idler, Defendants argue that he is entitled to qualified immunity as to this claim. *See* ECF No. 51 at 5. In doing so, Defendants bear the burden of adequately asserting this defense. *See, e.g., Berryman v. Niceta*, 143 F.4th 1134, 1140 (10th Cir. 2025) ("But to trigger the plaintiff's two-part [qualified immunity] burden, a defendant must first 'adequately present' the qualified-immunity defense." (citation modified)). Here, Defendants have not adequately asserted this defense. As for Officer Idler, the dismissal motion makes no mention *at all* of qualified immunity's *clearly established* prong except to descriptively explain that qualified immunity "protects

[1] As for the unlawful seizure claim against Officer Snow and Sergeant Goodrich, Defendants argue only that the nature of Plaintiff's "collective" allegations means that "the unlawful seizure claim against them must be dismissed." ECF No. 51 at 4. However, as discussed above, Plaintiff has not improperly "grouped" or "collected" all Defendants together in the operative complaint. Thus, this argument, which is essentially a reiteration of the argument rejected above, fails to persuade that dismissal of the *unlawful seizure* claim against Officer Snow and Sergeant Goodrich is warranted. And as to the *plausibility* of the claim itself, Defendants advance arguments only as to Officer Idler and Detective White. *See* ECF No. 51 at 4–7. Put differently, the limited nature of Defendants' briefing amounts to a waiver of any argument that Plaintiff has failed to plead a plausible claim against Officer Snow and Sergeant Goodrich, and the sole basis for Defendants' argument has been rejected above. *See, e.g., United States v. Capps*, No. 21–10073–EFM, 2024 WL 4679221, at *4 n. 12 (D. Kan. Nov. 5, 2024) ("Generally, if a party fails to raise an argument in its initial brief, the argument is waived."); *United States v. Pinder*, 121 F.4th 1367, 1373 (10th Cir. 2024) ("[S]tray sentences . . . are insufficient to present an argument." (citation modified)).

government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" ECF No. 51 at 5 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Although Defendants cite cases in support of the proposition that the Court's *reasonable suspicion* inquiry is laxer in this civil context than it is in the criminal context, *see* ECF No. 51 at 5, Defendants fail to explain how, or which, cases demonstrate that Plaintiff's alleged constitutional violations were *not* clearly established at the time they allegedly occurred. *Compare id.*, *with A Brighter Day, Inc. v. Barnes*, 860 F. App'x 569, 575 (10th Cir. 2021) ("[T]he qualified-immunity argument was underdeveloped. It contains mostly general legal statements and empty platitudes." (citation modified)).[2] Accordingly, the Court declines to dismiss Plaintiff's claim against Officer Idler on *qualified immunity* grounds. *See, e.g., Kulas v. City of Fort Collins*, No. 1:23–cv–02187–CNS–KAS, 2026

[2] While Defendants argue that *United States v. Daniels*, 101 F.4th 770, 777 (10th Cir. 2024), is a case about the "exact scenario contemplated by the qualified immunity defense," ECF No. 51 at 6, they fail to argue what, if any, propositions *Daniels* did—or did not—*clearly establish* for qualified immunity purposes. This underscores the inadequacy of their briefing in asserting this defense. The Court's conclusion is bolstered by the nature of Defendants' argument, which contends essentially that Plaintiff has not asserted a *plausible* claim, rather than that no constitutional violation occurred as a matter of *qualified immunity*. *See* ECF No. 51 at 5 ("The [operative complaint] contains only vague and sparse allegations (which is reason alone to dismiss)."). That Defendants' arguments are essentially Rule 12(b)(6) arguments, rather than *qualified immunity* arguments, underscores the inadequacy of their briefing. *See Berryman*, 143 F.4th at 1141 ("[I]n raising a qualified-immunity defense, a defendant may not merely rely on substantive legal arguments based on the Rule 12(b)(6) failure-to-state-a-claim standard." (citation modified)); *Ellis v. Salt Lake City Corp.*, 147 F.4th 1206, 1220 (10th Cir. 2025) ("[A] claim of immunity is conceptually distinct from the merits of the plaintiff's claim." (citation modified)). To the extent that Defendants elaborate on this argument in reply, *see* ECF No. 57 at 8–9, the Court declines to consider such elaborations—which in any event, are largely the same, and make no mention of the *clearly established* prong, or explain why under *Daniels* that Plaintiff cannot meet his *clearly established* burden. *See* ECF No. 57 at 9; *Est. of Esquivel by & through Montalvan v. Williams*, No. 1:24–cv–02213–CNS–TPO, 2025 WL 3687390, at *3 (D. Colo. Dec. 19, 2025) ("Defendant's contentions in reply fail to salvage his bare argument or warrant the Court's engagement with it." (citation modified)). Defendants are free to, should they choose to do so, try again at summary judgment. *See, e.g., Dominguez v. Crow*, Civ. No. 20–317–RAW, 2021 WL 4429933, at *3 (E.D. Okla. Sept. 27, 2021) ("Defendants may renew their assertion of qualified immunity by means of a motion for summary judgment.").

WL 160807, at *5 (D. Colo. Jan. 21, 2026), *appeal dismissed sub nom. Kulas v. Park*, No. 26–1044, 2026 WL 2415357 (10th Cir. May 12, 2026) ("These sentences are insufficient to adequately brief the issue of qualified immunity, and so the Court declines to consider Defendants' qualified immunity arguments." (citation modified)).

*Second*, as to Detective White, Defendants' arguments concern the *plausibility* of the unlawful seizure claim asserted against him. *See* ECF No. 51 at 6 ("Plaintiff fails to *state a claim* against Detective White for unlawful seizure." (emphasis added)). In response, Plaintiff explains that he asserts his claim against Detective White "under a chain-of-causation theory." ECF No. 56 at 5 (citation modified). Under this theory, Plaintiff contends that Detective White is liable because he "affirmatively sought and obtained a DNA warrant using identity information derived from an unconstitutional seizure, and that warrant was a moving force behind Plaintiff's prosecution and incarceration." *Id.* at 6.

As Defendants' reply brief confirms, the core issue as to Plaintiff's claim against Detective White is whether Detective White had probable cause to draft an affidavit, based on "information from the traffic stop and [Officer] Idler's background check," in order to "secure a warrant to obtain DNA from Mr. Daniels," ECF No. 50 at ¶ 22. *See also* ECF No. 57 at 6 ("Thus, at the time of Detective White's request and issuance of the warrant for Plaintiff's DNA, there was probable cause."). The operative complaint alleges that the DNA sample acquired from Plaintiff resulted in his incarceration. *See id.* ¶ 25.

More importantly, the operative complaint alleges that *no* probable cause existed at the time that Detective White used the traffic stop and background check information to prepare an affidavit resulting in Plaintiff being arrested and charged for "possession of

a firearm by a prohibited person." *Id.* ¶ 25. Drawing all inferences in Plaintiff's favor, the operative complaint alleges an absence of probable cause.[3] The operative complaint alleges that the information Detective White had available to him from Officer Idler's background check was "tainted," *id.* ¶ 22, as well as that Detective White, like other Defendants, *lacked* probable cause to detain Plaintiff, *see, e.g., id.* ¶¶ 45–47. Thus, the seizure that Plaintiff alleged suffered—being incarcerated—was the result of Detective White's determinations, which the operative complaint adequately pleads *lacked* the necessary probable cause. *See also id.* at ¶¶ 68–69.

To be sure, Defendants are correct that officers may rely on the statements from other offices in making *probable cause* determinations. *See* ECF No. 51 at 7; *Foote v. Spiegel*, 118 F.3d 1416, 1424 (10th Cir. 1997) ("Officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion and probable cause for an arrest." (citation modified)).[4] But, even if mistaken, such information must be

[3] In reply, Defendants assume that such probable cause existed. *See* ECF No. 57 at 5–6. This assumption rests on inferences drawn *against* Plaintiff, which the Court cannot make at this procedural stage. And although the operative complaint alleges that an Arapahoe County Court "issued an Order and Warrant to obtain [Plaintiff's] DNA," ECF No. 50 at ¶ 23, this allegation does *not* plead that probable cause supported the order and warrant. To the contrary—subsequent allegations plead that no such probable cause existed. *See id.* at ¶¶ 45, 48, 50; *Stonecipher v. Valles*, 759 F.3d 1134, 1141–42 (10th Cir. 2014) (observing that warrant is "clearest indication" of officers' good faith but that "[i]f it is obvious that no reasonably competent officer would have concluded that a warrant should issue, the warrant offers no protection" (citation modified)). Further, Defendants raise the issue of the order and warrant's supporting *probable cause* for the first time in reply, *see* ECF No. 57 at 6, amounting to a waiver of such argument. *See, e.g., Youngers v. Mgmt. & Training Corp.*, No. 20–cv–00465–WJ–JHR, 2021 WL 5881998, at *2 (D.N.M. Dec. 13, 2021) ("[A]rguments made for the first time in a reply brief are waived." (citation modified)); *Est. of Esquivel,* 2025 WL 3687390, at *3. Perhaps a factual record will ultimately support Defendants' argument. And they are certainly free to make the same argument—with evidentiary support—at the summary judgment stage. But in this procedural posture, the Court cannot draw an inference in Defendants' favor that the operative complaint somehow establishes probable cause.

[4] Because Detective White's conduct allegedly resulted in Plaintiff's incarceration, *see, e.g.,* ECF No. 50 at ¶ 31, the Court focuses its analysis on whether *probable cause* supported Detective White's conduct, in contrast to whether *reasonable suspicion* supported his conduct. *See, e.g.,Ellsworth v. City of Broken*

"reasonably trustworthy." *Albright v. Rodriguez*, 51 F.3d 1531, 1536 (10th Cir. 1995) (citation modified). *See also Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (explaining the same). And, drawing all inferences from the operative complaint in Plaintiff's favor, allegedly "*tainted* identity information," ECF No. 50 at ¶ 22 (emphasis added), is not "reasonably trustworthy," *Albright*, 51 F.3d at 1536, such that Detective White was entitled to rely on it in making any *probable cause* determination. In other words, reading the operative complaint's allegations in their entirety, *see Wilson*, 182 F.4th at 918, Plaintiff has adequately alleged that Detective White had reasons to doubt the information provided to him from the traffic stop and Officer Idler's background check. *Cf. Foote*, 118 F.3d at 1424 ("There is *no evidence* in the record that Spiegel had *any reason* to doubt Howe's statements." (emphases added)); *Romero*, 45 F.3d at 1476 (concluding that plaintiff "failed to show that the information known to [defendant] did not establish probable cause" because "the record [was] *completely silent* on this point" (emphasis added)).[5] Thus, Plaintiff has adequately alleged that his seizure was "unreasonable under the circumstances." *Harris v. Purgatory Corr. Facility*, No. 4:25–cv–00018–AMA–PK, 2025 WL 2996670, at *4 (D. Utah Oct. 24, 2025) (citation modified)).

---

*Arrow, Oklahoma*, 850 F. App'x 619, 622 (10th Cir. 2021) (contrasting "a seizure" which "generally requires probable cause," to "an investigative detention [which] only requires reasonable suspicion" (citation modified)).

[5] Consistent with these cases, the Court agrees with Plaintiff that his claim proceeds from a "causal theory"—whether the warrant, based on Detective White's affidavit, was deficient due to the underlying problems with Officer Idler's information—rather than from a "fruit of the poisonous tree" theory where Detective White's affidavit and resulting warrant should be "suppressed" due to Officer Idler's allegedly unconstitutional behavior. ECF No. 56 at 6. *Cf.* ECF No. 51 at 7 (urging dismissal because "information obtained from a search that is later determined to lack reasonable suspicion is not precluded by the 'fruit of the poisonous tree doctrine'" (citation modified)).

Accordingly, the Court rejects Defendants' argument that Plaintiff's unlawful seizure claim against Detective White should be dismissed.[6]

**C. Malicious Prosecution**

Defendants argue that "Plaintiff fails to allege malicious prosecution against any Defendant." ECF No. 51 at 7 (citation modified). The sole basis for this argument is that the operative complaint's allegations are conclusory. *See id.* at 8 ("Plaintiff states only conclusory allegations for each of these [malicious prosecution] elements with no factual enhancement whatsoever . . . .Plaintiff sets forth only conclusory allegations as to the subjective intent of undifferentiated officers.").[7] But, as explained in his response brief, Plaintiff's allegations as to this claim are not so conclusory as to warrant dismissal. *See* ECF No. 56 at 6 (collecting citations to operative complaint). Fundamentally, Plaintiff has put forward well-pleaded allegations that show Defendants caused his confinement, the underlying action terminated in his favor, no probable cause supported his continued confinement, and Defendants acted with malice in seeking his detention. *See, e.g., Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) (explaining *malicious prosecution* elements). Construing Defendants' broad arguments as attacking the plausibility of

[6] Defendants also argue—in one sentence—that this claim should be dismissed because "Detective White's reliance on information from Officer Idler in obtaining the warrant was reasonable, and thus he would also be entitled to qualified immunity." ECF No. 51 at 7. This is insufficient to assert qualified immunity as a defense, and therefore Detective White is not entitled to qualified immunity as to Plaintiff's claim. *See, e.g., Berryman*, 143 F.4th at 1140.

[7] Because this is the only dismissal argument as to this claim that Defendants advance, it is the only basis for dismissal that the Court considers. *See, e.g., Margolin v. Nat'l Ass'n of Immigr. Judges*, 608 U.S. 339, 342 (2026) ("Federal courts adhere to the principle of party presentation. That principle—the rule that *points not argued will not be considered*—distinguishes our adversarial system of justice from an inquisitorial one." (citation modified)).

Plaintiff's *malice* allegations, *see* ECF No. 51 at 8 (arguing that allegations as to Defendants' "subjective intent" are "conclusory"), the operative complaint has alleged sufficient factual content from which the Court can infer Defendants' malice.[8] Particularly given that the operative complaint has alleged not only that no probable cause supported Plaintiff's confinement, but that the information upon which Detective White made his *probable cause* determination was unreasonable. *See Lehmann v. Zehner*, No. 1:22–cv–00204–CNS–MEH, 2022 WL 11732949, at *6 (D. Colo. Oct. 20, 2022) ("'[M]alice' may be inferred if a defendant causes prosecution of an action 'without arguable probable cause' [which] exists where an officer's conclusions rest on '*objectively reasonable*, even if mistaken, belief that probable cause exists.'" (citation modified)).

### D. Failure to Intervene

Defendants argue that the operative complaint "fails to allege failure to intervene." ECF No. 51 at 8 (citation modified). The Court agrees as to Defendants White and Goodrich. To adequately allege "a constitutional violation in the form of failure to intervene [a plaintiff must allege] that (1) a government officer violated his constitutional rights, (2) a different government actor (the defendant) observed or had reasons to know about that constitutional violation, and (3) the defendant had a realistic opportunity to intervene, but failed to do so." *Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022) (citation modified). Here, Plaintiff's *failure to intervene* claim is premised on the events that occurred on February 7, 2021, when Plaintiff alleges he was unlawfully detained by Officer Idler. *See*

[8] Defendants challenge this *malice* with greater specificity in reply. *See* ECF No. 57 at 7. But doing so *in reply* does not salvage their argument, nor does making such argument *in reply* obligate the Court to consider it. *See, e.g., Youngers*, 2021 WL 5881998, at *2; *Est. of Esquivel,* 2025 WL 3687390, at *3.

ECF No. 50 at ¶ 12; *id.* at ¶ 82. But, even drawing all inferences in Plaintiff's favor, the operative complaint alleges that only Officer Snow was present at the time that Officer Idler allegedly detained Plaintiff. *See id.* at ¶ 13 ("Mr. Daniels did not match the description. Officer Snow (*arriving with* Officer Idler) admitted this mismatch under oath. No crime was observed." (citation modified and emphasis added). Thus, given the nature of Plaintiff's claim and allegations, Defendants White and Goodrich were not present at the time of the allegedly unlawful detainment, and thus this claim against them must be dismissed. *See, e.g., Fogarty v. Gallegos*, 523 F.3d 1147, 1163 (10th Cir. 2008) (observing in excessive force context that "*if* [an officer was] indeed *present* at [the plaintiff's] arrest with an opportunity to prevent the excessive use of force, he would have had a duty to intervene" (citation modified)); *Est. of Booker v. Gomez*, 745 F.3d 405, 422–23 (10th Cir. 2014) (determining in summary judgment context that "a reasonable jury could find any given defendant here liable for failing to intervene" because the plaintiffs "alleged and the video confirmed that all of the [d]efendants *were present* and observed the entire use of force over a two-to-three minute period" (emphasis added)).[9]

But the Court agrees with Plaintiff that he has adequately pleaded a *failure to intervene* claim as to Officer Snow. *See id.*; ECF No. 56 at 7. Accepting the operative complaint's allegations as true, and drawing all inferences from them in Plaintiff's favor, Plaintiff alleges that Officer Snow was on the scene with Officer Idler when Officer Idler "approached Plaintiff at gunpoint and detained him." ECF No. 50 at ¶ 12. It is reasonable

[9] Plaintiff's own brief acknowledges this *on the scene* requirement. *See* ECF No. 56 at 7 ("Failure to intervene is plausibly pled against *on-scene* officers." (citation modified)).

to infer from this and other allegations that—contrary to Defendants' argument—Officer Snow was present at the time that Officer Idler detained Plaintiff, and yet did nothing to stop or even deescalate, which is to say he did nothing to *intervene* as to the allegedly unlawful detainment. *See* ECF No. 51 at 8 (arguing operative complaint contains no "specific allegations that these officers observed a constitutional violation"). Indeed, the operative complaint alleges that Plaintiff had committed no crime, ECF No. 50 at ¶ 13, and that Plaintiff was "released following questioning by officers at the scene," *id.* at ¶ 16. It is reasonable to infer from this allegation that, rather than intervening, Officer Snow questioned Plaintiff along with Officer Idler, contributing to the length of Plaintiff's allegedly unlawful detention.[10]

Therefore, from a *failure to intervene* perspective, the operative complaint thus adequately alleges that Officer Idler "violated [Plaintiff's] constitutional rights," that Officer

---

[10] This allegation states that "[Plaintiff] was released following questioning by officers at the scene." ECF No. 50 at ¶ 16. While this specific allegation does not define "officers," reading the operative complaint in its entirety and drawing all inferences from its allegations in Plaintiff's favor, it is entirely reasonable to infer that "officers" refers to Officer Idler and Officer Snow—the only two officers "on the scene" at the time that Plaintiff was allegedly detained. *See id.* at ¶ 13 (alleging that Officer Snow "arriv[ed] with Officer Idler"). It further demonstrates why Defendants' reliance on *Sexton v. Faris*, No. 22–CV–1927–WJM–MEH, 2023 WL 5671492, at *10 (D. Colo. Sept. 1, 2023), is misplaced, *see* ECF No. 57 at 4. For *Sexton*, "[a]llegations of an officer's mere presence at the scene and [his] failure to stop any of the alleged constitutional violations committed by the fellow officers [was] not sufficient to state a claim for failure to intervene." 2023 WL 5671492, at *10 (citation modified). *See also Bark v. Chacon*, 504 F. App'x 741, 746 (10th Cir. 2012) (unpublished, non-binding precedent rejecting the argument that defendants "may be held liable by virtue of their mere presence at the scene and their failure to stop any of the alleged constitutional violations committed by their fellow officers"). But, as alleged, not only did Officer Snow fail to "stop" the alleged constitutional violation, *id.*, he *affirmatively participated* in such violation by questioning Plaintiff *before* releasing Plaintiff from his detainment. *See* ECF No. 50 at ¶ 16. Maybe subsequent proof undermines this allegation. *See Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1219 (10th Cir. 2022) ("At the motion to dismiss stage, [courts] are tasked with assessing plausibility, not proof." (citation modified)). In any event, this allegation renders this case much more like *Doe v. Tulsa Cnty., et al.*, No. 24–cv–380–SEH–CDL, 2026 WL 2677332, at *26 (N.D. Okla. Sept. 11, 2026), where a plaintiff's *failure to intervene* claim survived dismissal because plaintiff alleged that defendants "encouraged" another defendant's "inappropriate behavior," *id.* (citation modified)).

Snow "observed . . . that constitutional violation," and that Officer Snow "had a realistic opportunity to intervene, but failed to do so." *Bledsoe*, 53 F.4th at 616. The *failure to intervene* claim against Officer Snow survives dismissal.

**E. Municipal Liability**

Defendants argue that Plaintiff has failed to "state a plausible municipal liability claim against Aurora." ECF No. 51 at 9. The Court agrees.

"To prove municipal liability under § 1983, the plaintiff must show: (1) a municipality enacted or maintained a policy, (2) the municipality was deliberately indifferent to the resulting constitutional violations, and (3) the policy caused the underlying constitutional violation." *Arnold v. City of Olathe, Kansas*, 35 F.4th 778, 795 (10th Cir. 2022) (citation modified). *See also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (explaining *municipal liability* elements as "(1) official policy or custom, (2) causation, and (3) state of mind" (citation modified)). Even assuming that Plaintiff has satisfied the *policy* and *state of mind* requirements, *see id.*, the Court agrees with Defendants that he has failed to allege sufficient facts demonstrating that Aurora caused his constitutional injuries, *see id. See also* ECF No. 51 at 15 ("Plaintiff fails to plausibly allege causation." (citation modified)). At most, the operative complaint alleges the following:

> **Causation**: Officer Idler's admission ("no training" on Florida v. J.L. ruling), along with Detective White's use of tainted DNA evidence in violation of "poisonous tree" doctrines is a direct result of the City of Aurora's failures to adequately establish policy, and to train and supervise law enforcement personnel under their jurisdiction and authority.

ECF No. 50 at ¶ 100.[11]

This allegation—that Officer Idler and Detective White's allegedly unlawful conduct—is the "direct result" of Aurora's "failures to adequately establish policy" and adequately train and supervise officers, fails to show how Aurora was the "moving force" behind his constitutional claims. *Schneider*, 717 F.3d at 770. This is especially true where, as a doctrinal matter, the Court must apply "rigorous standards of culpability and causation" in its *municipal liability* analysis to "ensure that the municipality is not held liable solely for the actions of its employee." *Id.* (citation modified). Put a bit differently, alleging that Officer Idler and Detective White's conduct was the "direct result" of Aurora's unspecified policy failures does not adequately establish such policies were "closely related to the [alleged] deprivation of [Plaintiff's] rights." *Arnold*, 35 F.4th at 795. *See also Weitzman v. City & Cnty. of Denver*, No. 17–cv–02703–KLM, 2019 WL 1438072, at *15 (D. Colo. Mar. 31, 2019) (concluding comparable allegation failed to satisfy *causation* requirement); *Thompson, next friend of H.L.T. v. Henke*, Civ. No. 23–00411–JD, 2025 WL 1959353, at *7 (W.D. Okla. July 16, 2025) (explaining Tenth Circuit's "rigorous causation standard" and that plaintiff failed to put forward "plausible allegations of direct causation" (citation modified)).

Accordingly, the Court agrees with Defendants' that dismissal of Plaintiff's municipal liability claim is proper. *See* ECF No. 51 at 15; *Arnold*, 35 F.4th at 795

[11] Notably, this is the only *causation* allegation that Plaintiff identifies in his response brief in arguing that he has set forth a plausible *municipal liability* claim. *See* ECF No. 56 at 8.

(explaining that "to [plausibly allege] municipal liability under § 1983, the plaintiff *must show* . . . the policy caused the underlying constitutional violation" (emphasis added)).

## II. CONCLUSION

Consistent with the above analysis, Defendants' Motion to Dismiss, ECF No. 51, is GRANTED IN PART and DENIED IN PART. The motion is DENIED to the extent that it seeks dismissal of Plaintiff's *unlawful seizure* claim against Defendants Idler, Snow, Goodrich, and White. It is further DENIED to the extent that it seeks dismissal of Plaintiff's *malicious prosecution* claim against Defendants Idler, Snow, Goodrich, and White. As for the *failure to intervene claim*, the motion is DENIED to the extent it seeks dismissal of Defendant Snow, but is GRANTED to the extent that it seeks dismissal of Defendants Goodrich and White. The motion is GRANTED to the extent it seeks dismissal of Plaintiff's *municipal liability* claim.

DATED this 30th day of September 2026.

BY THE COURT:



Charlotte N. Sweeney
United States District Judge